SisterSong Women of Color v. Governor of the State of Georgia, Mr. Harris. Good morning, may it please the court. Oops. Can you hear me, Your Honor? Yes. Okay, good morning, may it please the court. On the first question about the constitutionality of the heartbeat restriction in Section 4. Should we stay this case pending the outcome of Dobbs? The state would be perfectly fine with that. Do you think that's what we should do? Yes, I think that Dobbs is, it's rare that you have a pending Supreme Court case with certiorari granted with the exact same question presented as one of the issues and this question which we obviously briefed exhaustively under pre Dobbs law, but Well, whether you're content with it or not, I'm trying to figure out whether that's what would the appropriate course of action would be. I mean, the question presented, as I understand it, in Dobbs, no matter which way the Supreme Court answers it, affirmatively or negatively, it seems to me that it's going to bear directly on the correct outcome of this controversy. We agree with that, Your Honor. So, unless the court has additional questions about the heartbeat restriction, I'd like to focus my time on the vagueness and severability issues. So on vagueness, the central point to this whole question of facial versus as applied challenges is the plaintiffs don't actually challenge or allege that anything in the Life Act itself is unconstitutionally vague. All they challenge is how the Life Act's definitions apply to hypothetical scenarios under other statutes, and we think to even ask that question is to answer it. We're not talking about the Life Act, we're talking about how it applies in other contexts, and so we think this is just a tailor-made scenario for as applied rather than facial challenges. We also think it's important, the plaintiffs have never disputed that there are perfectly clear, non-vague, constitutional applications of these definitions. We cite some at page 38 of our brief, take product liability. If a defective product injures a natural person, which now is defined to include unborn children, there's a remedy. There's a damages award. Or a battery of a pregnant woman and the child died. Exactly. And so there's several problems with that because, first of all, it's not vague. Second of all, it's not unconstitutional. And third of all, the plaintiffs have never alleged that things like that even apply to their conduct. And so we think as a matter of federalism, as a matter of judicial role, as a matter of remedy, it was just very, very overbroad and inappropriate for these definitions to be invalidated on their face. And so I think, Your Honor, to see how overbroad the remedy is, you need look no farther than the plaintiffs' own pleadings. So the plaintiffs claim that there are hundreds of statutes that are now vague, yet they only cite five. And of those five, they actually develop an argument on only one to three, depending on the brief. And so we strongly dispute each of the examples that they claim to be vague. But even if you accept that some of those are vague, which we don't, there are still, by their own count, hundreds of other applications that they've never challenged, they've never cited, they've never alleged to be vague. But yet we have a decree from a federal court telling the state that it can't enforce the law in those circumstances. So we think that what should have happened here is pretty straightforward. If the plaintiffs thought that specific applications injure them in concrete, specific ways, they could bring an as-applied challenge about those. The answer is not to shut down every conceivable application. Now, I think it's telling, Your Honor, the plaintiffs in the district court on this question of facial vagueness have essentially no affirmative case law other than some of these vagrancy and loitering cases. So Colander, for example, is, I think, one of their lead cases all along. But those are completely inapposite here. In a case like Colander, the criminal law gave the police ability to arrest anyone who didn't give a credible and reliable explanation for what he or she was doing as they were out and about. And so, of course, in a case like that, every single case depends on what the officer's subjective judgment is about what's credible or what's reliable. So in that case, it is vague in every circumstance because there's never a way to apply it without some sort of subjectivity. And the Supreme Court has also gone out of its way. In Papa Christu, page 165, the court said that vagrancy laws are in a class by themselves for purposes of vagueness analysis. Vagrancy laws also, unlike the law's plaintiff's site here, have no scienter element, no intent element, whereas even the handful of laws the plaintiff's site, they talk about willful, wanton, reckless. These are high levels of scienter. Nobody's going to accidentally violate these laws. And so other than some of these inapposite vagrancy cases, we think the plaintiffs have basically no precedent supporting this extremely broad theory of facial vagueness. Go back to the first question. I do wonder what discovery would have accomplished here. It seems to me, at least based on the stipulated record, that this act would violate the undue burden standard. We think what it would have accomplished, Your Honor. So the Supreme Court has never directly, until Dobbs, considered a case that involves a time limit on abortion as opposed to something like an admitting privileges rule and an informed consent rule or something about the procedure or the mechanics or the informed consent. And so what we would have wanted to do, Dr. Curlin's report, which is in the record, would have talked about why, as a matter of bioethics, as a matter of medicine, as a matter of medical practice, why it makes sense to use the heartbeat. He would have talked about the ethical considerations of that. He would have explained that once a heartbeat is detected. I don't understand what that has to do with the undue burden. I mean, the question is, you know, is, is whether the regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a non viable fetus. Yes, that's, I mean that's what Chief Justice Roberts's opinion in June medical says the controlling opinion, it seems to me that at least based on the stipulated record. You couldn't, you couldn't possibly win. Your Honor. Dr. Scott, who was practicing OBGYN, we had also retained as an expert she was going to testify about exactly some of those issues so things such as when pregnancy is detectable about the feasibility of detecting pregnancy about the possibility of obtaining I think the district court. We look at this to know about. Okay. I think the district court was obliged to look at this from an undue burden perspective, it didn't do so. I might agree with you that was a mistake, but if it had done so I'm not sure how discovery would have made any difference based on the stipulations that we have here. Yes, and I think Dr Scott it's in, it's in Scott's Crawford expert report which of course was excluded and never admitted but Scott was planning to testify about. Again, even if today. Yes, I agree and the stipulations are what they are I mean, it is true that a lot of abortions happen at six or seven weeks thereafter but Scott would have talked about if the law were to go into force. What would have been the feasibility of detecting and obtaining abortions earlier, in light of changes like that so I think that sort of evidence would have been relevant is like times getting lower if I could just quickly talk about severability also. So, that's a Georgia question and you have a severability provision right. Yes, so under a yacht, the Supreme Court is an abortion case, and the Supreme Court just could not have been clearer that the court must quote prefer to sever on abortion laws problematic provisions while leaving the remainder intact and try not to nullify more of a legislature's work than is necessary. The Georgia legislature passed common sense fetal well being provisions, including one that would make absent fathers pay child support during pregnancy and another that would give valuable tax benefits to pregnant women. These would have affected 10s of thousands or even hundreds of thousands of women there 126,000 live births in Georgia every year 45% of which are two women who are unmarried so the impact of these would have affected far more women and families than anything, regulating or restricting abortion, and we think several things so first of all, the purpose of the act is to promote the well being of the unborn, that's obviously what these provisions do. And then the text, even if you assume which we disagree with that there's a problem with the definitions, the definition of natural person is not used in anything else in the life act so the child support provision does not talk of natural persons, the tax benefit provision does not talk about natural persons, the, there's a provision about damages for fetal death does not talk about natural person so we think under straightforward, both Georgia severability law and what the Supreme Court is told courts to do on remedies and abortion cases we think this is an obvious case for severability, even if anything in the act is unconstitutional. Mr. Harris Thank you you say five minutes for rebuttal Miss Watson. Thank you. Good morning, Your Honor, may it please the court Elizabeth Watson for the plaintiffs, Your Honor, I wanted to start by addressing Jackson women's health organization. I just wanted to make sure the distinction was clear because the Supreme Court is considering the constitutionality of a 15 week ban in that case. So if you were to uphold that law. That would, that would really require us to think hard about how, how the Supreme Court's decision applies here right. Well I think it would be, it depends on what the court's reasoning is for of course, breaking down the law, we ought to wait, isn't it. Your Honor, I, the plaintiffs do not have any problem waiting at the court feels that that is appropriate here and we would be happy to do supplemental briefing after that case. Yeah, I think that's, I mean, I think that's the prudent way to proceed but I'm wondering, I understand, you're both saying you don't have a problem with that. Don't you agree that that's really what we ought to do I mean it's not every day that we get the Supreme Court actually, we can allow the Supreme Court to do some work for us. It's nice when it happens. Isn't this one of those situations. Yes, yes, Your Honor, I'm, I simply point out that the court may do the work for you, or it may address that, you know, a 15 week ban that prohibits substantially less abortions than the case does here again we have 87% of being banned under this law. But the issue really is at the end of the day we don't know what their analysis is going to be and obviously their analysis is going to be binding on us and then that's where that becomes the issue for us right. Completely, completely, completely, completely correct. And if the court, if the court rules that that ban is unconstitutional it makes this case a lot easier doesn't it. Well, yes, if they have held the current precedent. Yes, that would. This case is decided under 50 years of the Supreme Court precedent so if the court continues to follow that precedent then yes this case is easily resolved as it was in the district court. I can at least the initial question. You know, if you want to get to the others, I mean it seems to me, the state's argument has a lot more power when it comes to the vagueness and severability issues here. I think you have a tough road to hoe on those Miss Watson. Yes, Your Honor, happy to address a vagueness and severability here this morning. HB 41 amendment to the code imparts vagueness into the code because HB 41 amends the code to declare fetuses and embryos to persons, but it does not tell people how to change their conduct to account for this new class of persons that would exist inside of another person. In this way, numerous statutes amended by HB 41 would fail to give plaintiffs and their patients and members notice of what conduct is forbidden or required, and would fail to write explicit standards for law enforcement to prevent arbitrary or discriminatory enforcement of the amended statute. This is a facial challenge, which requires that you prove that it's unconstitutional in all its applications. No, Your Honor, this is a facial challenge, but it is not correct that the Supreme Court has said that we need to prove that HB 41 amendment to the Georgia Code is invalid in all its applications. You want to use the First Amendment standard and import it to this, in this instance, but the Supreme Court's never done that, has it? Well, it's the First Amendment standard, Your Honor, but it's also a standard that has been used in the abortion context. In Cu Laude, the Supreme Court held that, the court noted that the prohibition against vague criminal statutes is, quote, especially true where uncertainty induced by the statute threatens to inhibit the exercise of constitutional rights. Cu Laude was about abortion. They were talking about abortion in that case. And yes, Mr. Harris is correct. We also have Kohlander v. Lawson and Village of Hoffman v. Flipside-Hoffman v. States, which both speak to the chilling of constitutional rights. And in Bagot v. Bullitt, the Supreme Court recognized that the vice of unconstitutional vagueness is further aggravated where the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution. Further, this law, no one, the defendants do not dispute that this law, that plaintiffs and plaintiff's patients and members will have to conform their conduct to the law as amended. And the court has recognized facial validation is appropriate where vague law imposes criminal penalties several times, including in Kohlander and Hoffman v. States, and the court just recently affirmed that principle in 2015 in Johnson v. United States. And again, it hasn't been applied in the abortion context twice in Akron v. Akron Center for Reproductive Health and Cu Laude v. Franklin. All of these cases say that when a law reaches constitutionally protected conduct or imposes criminal penalties, the standard for vagueness is at its strictest. And this court is bound by and has recognized those precedents in Alabama Education Association v. State Superintendent and Indigo Room v. City of Fort Myers. Moreover, HB 41's amendment to the code leaves no space for anything but facial invalidation here. The amendment states that all appearances of the term person must now include embryos and fetuses. To grant anything less than facial relief, this court would have to create a limitation out of full clause. Supreme Court precedent clearly holds that such judiciary writing is inappropriate. Finally, Your Honor, I'm happy to answer any questions about this vagueness, but it's also true that even if the court were somehow to resolve this vagueness, HB 41 imparts into the code without facial invalidation of Section 3, HB 41 must be enjoined in its entirety because it is not severable. The purpose of HB 41 is to ban abortion, both by declaring fetuses and embryos to be persons under the law, and by explicitly banning abortion. Because this purpose must be... It does have a severability clause, doesn't it? Yes, Your Honor, but under Georgia law, it's exceedingly clear that a severability law did not change the test. The Georgia Supreme Court said in Mangley that a severability clause is guidance, not an absolute command. The Supreme Court said the same thing. But under Georgia law, if invalid portions may be severed, if they are not mutually dependent on the remaining portions and legislative intent, it's not compromised, right? Yes, Your Honor, I believe that is the standard. But in Mangley, the Georgia Supreme Court found the law not severable despite the severability clause. Another case, Damer Court v. Ferrante, the Georgia Supreme Court... How is giving pregnant mothers a dependent child tax credit mutually dependent on banning abortion? Your Honor, the district court held that because Section 3 of HB 41 must be facially invalidated because the terms used in Section 1 cannot be used throughout the rest of the statute. Just as Section 3 sets out the terms for the entire Georgia Code, it sets out the terms for the rest of this enactment. How is that provision in any way related to the provision of a child tax credit for dependent child tax credit for pregnant mothers? That can stand alone, can it? Well, Your Honor, I think that goes back to the purpose as well, because as you just stated, the standard here is both mutual dependence and the intent of the legislature. The purpose of the law cannot be frustrated. But they put a severability clause in. We know that they wanted at least some provisions upheld if some were struck down, if that was feasible. So we know what legislative intent is. And I don't see how there's any mutual dependence here whatsoever with something like the dependent child tax credit for pregnant mothers. Well, Your Honor, the district court and, of course, the Georgia court has also said that mutual dependence and purpose are not completely separate inquiries. And the purpose here is, as clearly stated in the preamble, is to provide legal recognition for fetuses and embryos to declare them to be persons. Thus, the new causes of action that you're talking about are not new benefits. What would be the point of the severability clause? I mean, there is a reason for the severability clause. It's basically, your argument is, is that there is no purpose to the severability clause and that, therefore, it doesn't exist. No, Your Honor, that's not my argument. My argument is that the Georgia Supreme Court has said that the severability clause creates a presumption in favor of severability, but does not allow the court to give a statute in effect altogether different than it was thought when it was considered as a whole. That is what is happening here. The law as considered as a whole was meant to give legal recognition to fetuses and embryos by declaring them to be persons. But basically, what your argument suggests is the fact that this is an abortion law in and of itself, anything is off the table and should be stricken and it cannot be severed. That's really the basis of your argument. Your Honor, I think that this enactment went further than to talk... Because a tax credit to a pregnant mother cannot be possibly in any way, shape or form unconstitutional. Your Honor, I think, well, I have two responses there. First, the distinction between the purposes of benefits for a potential parent and benefits for a fetus as persons were fully explored in Roe. The court recognized that creating a cause of action for potential... How is it unconstitutional to make a father pay for the cost of a pregnancy that they were partially responsible for? Your Honor, if that provision had been passed in isolation from the rest of this law, it might be constitutional. Well, that sounds like it's severable then. That is not how Georgia law interprets severability law. And there are several cases here that are cited in our brief that talk about this exact issue. That just because there are some constitutional provisions does not mean... You can't enforce constitutional provisions pursuant to an unconstitutional law. Let me quote you another Georgia Supreme Court decision. Union City Board of Zoning Appeals, 1996. There's a presumption the legislature intended for invalid provisions to be separated there from rather to be considered as an inextricable part of a whole. That's the presumption, isn't it? Well, Your Honor, I agree that that is the presumption. I think the presumption is overcome here, given that the state has told us what its purpose is. And it was to give more expansive state recognition to fetuses and embryos as a person than what federal law, including Casey and Roe, which are mentioned by name, provides. The only way the court could find this law was not enacted with banning abortion as a central feature is to ignore the text of the law. Banning abortion is unconstitutional under decades of Supreme Court precedent. The state lacks the power to provide full legal recognition to fetuses and embryos above the minimum requirements of federal law in this way. Because doing so would infringe on the rights of pregnant people. When the purpose is so thoroughly frustrated, Georgia law instructs that the enactment be enjoined in its entirety. And federal law does not contradict this instruction. I think it is clear that we all agree Georgia law applies here. And AOT says, AOT, a case cited by both sides, warns against the court usurping the role of state legislatures and playing the role of savior when presented with a far-reaching unconstitutional enactment like HB 481. I believe, since I've addressed the facial invalidity as well, again, section 3 can be enjoined under, or HB 481 should be facially enjoined in section 3 in particular, it can be enjoined under three purposes, right? It's unconstitutionally vague and it's not severable from the rest of the statute. So HB 481 must be enjoined in its entirety. And the cases cited in our brief, as well as the discussion we've had here today, I think shows that the facial relief is appropriate here. Facial invalidity is appropriate here. If the court has no further questions, I can exceed my time. Thank you, Ms. Watson. I don't think we hear any further questions. Mr. Harris. Thank you, Your Honor. Just a couple quick points in rebuttal. On this question of facial versus as applied, I draw the court's attention to Gonzalez v. Carhartt, which we haven't talked about yet. So Gonzalez is an abortion case. The court rejects a facial vagueness challenge and in reasoning that applies with full force here. So the law there, just like the ones plaintiffs cite as the allegedly vague applications, they have scienter requirements. And so the court notes in Gonzalez that, of course, scienter requirements help alleviate any vagueness. The court also, the challengers in that case, just like plaintiffs here, made an argument about arbitrary enforcement and discriminatory enforcement. And direct quote, respondents' arguments concerning arbitrary enforcement are speculative because this is a pre-enforcement challenge where no evidence has been or could be introduced to indicate whether the act has been enforced that way. So at the end of the day, the district court and the plaintiffs keep talking about arbitrary enforcement and these allegedly vague applications. But they've never pointed, in addition to the fact that the text isn't vague, they've never pointed to a single government official anywhere in the state of Georgia who has even remotely indicated that he or she would enforce the law against the types of medical practice or routine things that the plaintiffs claim to worry about. And then Gonzalez, at the end of the opinion in part five, the court talks about the importance of as-applied relief. The court says as-applied challenges are the basic building blocks of constitutional adjudication. The court reiterates that even though the plaintiffs didn't meet the high standard for a facial attack, as-applied challenges are available. And we don't dispute that. I mean, you have to make a threshold showing to bring a pre-enforcement challenge. But again, if there's some instance where the plaintiffs think they actually would be harmed in a concrete way, they can do that. I'd also reiterate, Your Honor, on this question of mandatory reporting, which is one of the statutes that's cited as allegedly vague. The purpose of that law is to get help to people who need it. And so the state's not looking to entrap people. I mean, the state government issues guidance about how to comply with that. They hold trainings. If the plaintiffs are concerned about how to apply the mandatory reporting obligations, the state would be very happy to work with them or anyone else to put out guidance, to issue clarifications. Because the goal of all of that is if a pregnant woman or any person or child is in a dangerous situation, to be able to get them the help they need. So I think it's not plausible to suggest that we're somehow trying to entrap people into violations. Finally, on severability, I think a good way to look at the tax credit and child support and some of the other provisions is, you can think of a state that has essentially no limits on abortion or allows unrestricted abortion at any time in pregnancy, could still make a totally rational policy decision to say, pregnancy is really expensive and so we're going to give you tax benefits or we're going to get you child support if the father's absent. And take the federal WIC program, the Women, Infants, Children program. There's a federal program that gives important nutrition benefits to low-income pregnant women. And so the idea that these programs are just a ruse for abortion, it doesn't withstand scrutiny because the purpose of the LIFE Act as articulated... So, they provide the child tax credit. The fact that it has, in some sense, an anti-abortion purpose doesn't make it unconstitutional, does it? Of course. And the Supreme Court has said that a state may, throughout pregnancy, express its interest in protecting life and ensuring abortion decisions are fully informed. And it's just inconceivable to me to think that the Supreme Court, especially when you read cases like Ayotte, which talks about the limited role and the need for narrow remedies, it's inconceivable that under the reasoning of cases like Ayotte, that these provisions are inseverable, especially in light of both background principles of Georgia law as well as the severability clause in the Act. Thank you, Mr. Harris. Thank you, Your Honor. We'll move to the third case.